BRUNNER *et al. v.* ROYAL.

The evidence being conflicting, there was no abuse of discretion in granting a temporary injunction.        *Judgment affirmed.*
August 1, 1892.

Injunction. Sheriff's sale. Before Judge MILLER. Bibb county. At chambers, May 2, 1892.

An injunction was granted on the petition of W. W. Royal, restraining the defendant from interfering with Royal's possession of a house and lot where he resides, which was sold by the sheriff on April 5, 1892, and purchased by the defendant Brunner, upon condition that Royal within five days should pay into court $185 and interest from date of sale, to be held subject to the further order of the court. The sale was under an execution issued from a justice's court in the suit of Boifeuillet & McCaw *v.* W. W. Royal, surviving partner of W. W. Royal & Co., dated May 4, 1889, for $65.40 principal, $6.55 interest to April 27, 1889, and future interest from that date, with costs. It contained an entry by Burroughs, constable, that after due search he was unable "to find any personal property of defendant which to pay this execution," dated March 7, 1892; also an entry of the same date, signed by the same constable, of levy on the property of W. W. Royal, and reciting, "Written notice given said W. W. Royal as required by law." Then followed the sheriff's entry of sale to Brunner for $185, and of application of proceeds, dated April 7, 1892. The sheriff's deed to Brunner is dated April 5. The petition of Royal attacks the levy and sale as illegal and void, because he had no notice or knowledge of levy until after the sale. This allegation as to want of notice is supported by the testimony in his behalf, which is directly to the contrary of that of the constable, who swears that he told Royal he would have to levy on the land in question, "then wrote out a memorandum of the levy on the lot and read it to him," and then returned to town and made the entries on the execution. Brunner swears that Royal told him a few days after the sale that he (Royal) had been notified of the levy at the time it was made, by the constable who came out to see him to make the levy. This also is contradicted by Royal's affidavit. The petition

alleges also that the sale was procured for the purpose
of obtaining the property for a small price; and this is
denied in the answer. It further appears that the Bibb
Loan & Building Association held a deed from Royal to
the property to secure a loan, and that Royal held its
bond to reconvey the title on payment of the loan, the
amount due on April 5th being $463. The loan was
$800; it was made on September 22, 1886, and was re-
payable in monthly instalments of $8. At the sheriff's
sale the attorneys for the association gave notice of its
claim. After the sale Brunner paid to it the $463, re-
ceipt of which was acknowledged on the deed held by
it, and the same was cancelled April 16, 1892. Brunner
sets up that while his bid was made with knowledge
that the property was subject first to the loan, he acted
innocently and in good faith, believing the sale to be
legal and valid, and being informed that a legal levy
had been made with due and legal notice to Royal; and
that it was his right, as the purchaser of the plaintiff's
equity of redemption, to pay the loan and receive can-
celled the deed which it held. There is testimony of
Royal and his son that about April 15th, the son in-
quired of Brunner what amount would be required to
settle with him, and he replied that it would be about
$200, and requested the son to bring his father, and
they would talk about it; that they went together to
see Brunner, and Royal told Brunner that he did not
want Brunner to lose anything by it, and that he was
willing to pay him what he had paid out, and wanted
to know what could be done; that Brunner replied he
did not want to deprive him of his home, that he would
go down town and see about it, that he had to meet the
directors (of whom he was one) of the Merchants &
Mechanics Building & Loan Association, and if Royal
would come back the next day at ten o'clock, he would
let him know; that on the next day at ten o'clock Royal

returned and waited two hours for Brunner, and when Brunner returned he said he could not do anything for Royal, that he had seen the directors and washed his hands of it, that the loan association claimed that he had bought it for them and that they thought they had made a good trade as they owned the land behind it, and also owned it, and they had decided to hold it. Another ground of attack on the levy and sale is, that the levy was excessive. The testimony for Royal tends to show that the property is worth $1,500 and could have been divided for the purpose of levy and sale, while the testimony for Brunner is to the effect that it was incapable of division, that it would not bring over $800 at public sale and possibly $1,000 at private sale, and that with the encumbrance above mentioned, one witness would not have made an offer or bid on it. It is also alleged that the execution did not bind the property of Royal individually.

The defendants excepted to the grant of the injunction, and especially to the grant of it without requiring Royal to pay or tender to Brunner the amount paid by Brunner to the Bibb Loan & Building Association in satisfaction of the lien held by it.

RYALS & STONE, for plaintiff in error.
DESSAU & BARTLETT, contra.